WILLIAM A. BEETON, JR. AND ANNE H. BEETON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beeton v. Commissioner
Docket No. 37872-85.
United States Tax Court
T.C. Memo 1987-472; 1987 Tax Ct. Memo LEXIS 468; 54 T.C.M. (CCH) 583; T.C.M. (RIA) 87472; September 17, 1987. William A. Beeton, Jr., pro se. Wilton A. Baker, for the respondent. SCOTT *470 MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1982 in the amount of $ 2,260.73 and an addition to tax under section 6651(a)(1) [1] in the amount of $ 1,329.53. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision: (1) whether petitioner, William A. Beeton, Jr., is entitled to the deductions and investment tax credit he claimed from selling Shaklee products; (2) whether petitioner, William A. Beeton, Jr., correctly determined his self-employment tax liability; and (3) whether petitioners are liable for the addition to tax under section 6651(a)(1) for failure to timely file their income tax return for taxable year 1982. FINDINGS OF FACT At the time of filing their petition herein, petitioners resided in Fauquier County, Virginia. Petitioners filed their Federal income *471 tax return for the calendar year 1982 on April 9, 1984. During the year in issue, 1982, William A. Beeton, Jr., (hereinafter "petitioner") was an attorney practicing law in Alta Vista, Virginia. In the fall of 1981, petitioner campaigned for and was elected to a one-year term in the Virginia General Assembly ("General Assembly") to commence serving January 13, 1982. In 1981 petitioner was sponsored to sell Shaklee products by his father-in-law, an ophthalmologist and Shaklee distributor. Shaklee is a distributor of vitamins and a liquid protein product used by individuals in a weight loss program. The Shaklee program works in a pyramid fashion. Individual distributors purchase their products from their distributor-sellers who purchased from the company. Only when a distributor's sales reached a certain level could he purchase directly from Shaklee. Distributor-sellers received a percentage of the amount their distributor-purchasers bought from them. To be successful with Shaklee, a distributor must sell both to end-users and to other distributors. Petitioner made no substantial sales of Shaklee products in 1981. He had hoped his wife would help with this activity but *472 she did not. From January 13, 1982 through March 13, 1982, the General Assembly was in session and petitioner remained in Richmond. During that time petitioner was not paid by his law firm and due to the lag time in being paid by the State he borrowed money for living expenses and expenses connected with selling Shaklee products. In the fall of 1982, petitioner campaigned for but was defeated in his bid for reelection to the General Assembly. In 1982 petitioner, after the conclusion of the session of the General Assembly, spent a considerable amount of time campaigning for reelection. Petitioner's activities connected with serving in the General Assembly and campaigning for reelection, took away from the time his father-in-law had thought he would devote to Shaklee sales. Petitioner would talk with people he saw in the General Assembly and in his law practice and with his friends about Shaklee products. After his defeat for reelection in 1982 petitioner did not actively attempt to sell Shaklee products for awhile. In late fall of 1982 he decided to devote more time to Shaklee sales. During November and December of 1982 petitioner devoted approximately twice as much time *473 per day to Shaklee as he had previously done. During this time petitioner spent "an hour or two a day" on his Shaklee activities although he did not regularly go to see people solely to attempt to sell them Shaklee products. Petitioner's total sales of Shaklee products in 1982 amounted to only $ 350. He sold Shaklee products to 10 to 12 persons, two of whom were his parents, one was his secretary and the remainder friends who he visited for primary purposes other than selling Shaklee products to them. Petitioner never made a profit selling Shaklee, did not keep a separate set of books or a journal with respect to this activity, and did not have a separate bank account for his Shaklee activities. As a member of his law firm, petitioner was provided with a leased Ford Fiesta which he drove to work, for his law firm business and in his General Assembly duties. Petitioner also owned a station wagon which his wife drove and which was generally used as the family car. On December 30, 1982, petitioner purchased a Volkswagen Jetta automobile ("Volkswagen"). He picked up the car on December 30, 1982, spoke to the salesman about Shaklee vitamins, and drove home. Petitioner could *474 not specifically recall where he drove the Volkswagen on December 31, 1982 but did not recall using it in connection with Shaklee activities on this day. The only use made by petitioner of the Volkswagen in 1982 other than personal use was for storing his plastic Shaklee briefcase full of glossy Shaklee brochures. Petitioner used the car for personal driving on December 30 and 31, 1982. On January 1, 1983, petitioner withdrew from his law firm. After withdrawing from his firm, he returned the Ford and began to use the Volkswagen for commuting and in his law practice. In early 1983 petitioner began to practice law in Warrenton, Virginia. Commuting between Alta Vista and Warrenton required substantial travel time leaving petitioner little time for his Shaklee activities. In 1983 petitioner was no longer involved in selling Shaklee products. On a Schedule C with respect to Shaklee products included with petitioner's 1982 Federal income tax return he claimed the following deductions: Car and truck expenses
$ 1,050.00
Depreciation
5,000.00
Dues and publications
15.00
Insurance
80,80
Interest on business
indebtedness
612.24
Office supplies and postage
25.00
Taxes
377.22
Travel and entertainment
165.00
Utilities and telephone
180.00
TOTAL DEDUCTIONS
$ 7,505.26
*475 From the sale of Shaklee products in 1982, petitioner reported a loss in the amount of $ 7,460.73 computed on Schedule C as follows: Sales
$ 350.00
Cost of goods sold
305.47
Total income
44.53
Total deductions
7,505.26
LOSS
$ 7,460.73
The $ 5,000 depreciation deduction claimed by petitioner on the Schedule C with respect to the sale of Shaklee products was with respect to the Volkswagen purchased on December 30, 1982. This claim was made pursuant to an election under section 179, to expense the cost of the Volkswagen. Petitioner on his 1982 return claimed an investment tax credit of $ 270 based on the entire cost of the Volkswagen, with an assertion that the vehicle was used exclusively for business. In the notice of deficiency respondent determined that petitioner had not established that the $ 7,460.73 amount was a loss sustained by petitioner, that petitioner was not entitled to the claimed investment tax credit, that petitioner had erroneously computed his self-employment income tax liability and that petitioners did not file their return within the time prescribed by law or establish that such failure was due to reasonable cause. OPINION *476 Petitioner contends that he was in the trade or business of selling Shaklee products with the objective of making a profit and therefore all of his ordinary and necessary expenses incident to that "business" should be deductible. Respondent contends that petitioner has failed to substantiate the expenditure of any of the amounts claimed as deductions in connection with the Shaklee products sales except the cost of goods sold and the cost of the Volkswagen. Respondent contends that petitioner is not entitled to the claimed deduction and investment tax credit with respect to the Volkswagen since this automobile was not used in connection with petitioner's sales of Shaklee products. Alternatively, respondent contends that the Volkswagen was not used in a trade or business as required by section 179(d) since petitioner's sales of Shaklee products in 1982 did not constitute a trade or business. We agree with respondent that petitioner has totally failed to substantiate the claimed car and truck expenses, dues and publication expenses, insurance, interest on business indebtedness, office supplies and postage, taxes, travel and entertainment, and utilities and telephone. Petitioner *477 offered no evidence to support the claimed deductions for dues and subscriptions, insurance, taxes, and travel and entertainment. The only evidence offered to support the car and truck expense was some checks made to gasoline companies. Petitioner was unable to say how much of the amount was allocable to his business as an assemblyman and to the personal use of his automobile for himself and his family. Petitioner testified that he borrowed money to pay his living expenses while he was in the General Assembly and for his Shaklee activities. He made no showing that any interest was paid on this indebtedness in 1982 or how much, if any, of the amount borrowed was used in connection with Shaklee sales. Petitioner offered some checks made to the postal service and to the telephone company but again made no showing that any of these amounts were for other than personal use. We hold that petitioner has failed to substantiate any of his claimed deductions in connection with Shaklee other than cost of goods sold, which respondent has in effect allowed since he disallowed only the claimed loss deduction and the cost of the Volkswagen. We therefore sustain respondent's disallowance of *478 the deductions other than the Volkswagen depreciation claimed by petitioner in connection with the sale of Shaklee products for lack of substantiation. To be entitled to the deduction under section 179, the property expensed must have been acquired by purchase for use in a trade or business. Specifically, section 179 allows a taxpayer to elect "to treat the cost of any section 179 property as an expense which is not chargeable to capital account. Any cost so treated shall be allowed as a deduction for the taxable year in which the section 179 property is placed in service." Section 179(a). For taxable years beginning in 1982 the aggregate cost which may be treated as a deduction under section 179(a) is $ 5,000. Section 179(b)(1). "Section 179 property" was defined as "section 38 property * * * which is acquired by purchase for use in a trade or business." Section 179(d)(1). Consequently, if petitioner's Shaklee activities do not rise to the level of a trade or business, petitioner is not entitled to this expense deduction. Similarly, the investment credit of $ 270 is subject to a trade or business requirement. Section 38 authorizes a credit against tax for investment in *479 certain depreciable property. Section 48(a) defines "section 38 property" as including certain types of tangible personal property but only recovery property within the meaning of section 168. Section 168(c)(1) then defines "recovery property," in pertinent part, as "tangible property of a character subject to the allowance for depreciation -- (A) used in a trade or business, * * *."
Thus, unless petitioner's Shaklee activities were such as to constitute a trade or business, petitioner is not entitled to the investment credit. The cases considering what constitutes a trade or business are numerous. The Supreme Court recently in Commissioner v. Groetzinger, 480 U.S.    (Feb. 24, 1987), after discussing the distinction between a trade or business and "transactions entered into for profit" which do not satisfy the narrow category of trade or business, stated: We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify. *480 In our view petitioner's activities with respect to Shaklee products in 1982 were not carried on with continuity and regularity. Rather these activities were sporadic. Petitioner's activities had none of the indicia of a trade or business. He kept no books, he had no separate bank account, he spent little time on the activity and treated it as only incidental to his regular business activities. We therefore conclude that petitioner's activities with respect to Shaklee products did not constitute a trade or business. Therefore, petitioner is not entitled to the claimed deduction for the Volkswagen under section 179 or the claimed investment tax credit with respect to this car. Since we have concluded that petitioner was not engaged in a trade or business of selling Shaklee products it is unnecessary to consider respondent's contention that the Volkswagen was not "placed in service" in 1982. However, it is apparent that the only use of the Volkswagen in connection with Shaklee products in 1982 was that petitioner put some Shaklee brochures in it. All other uses of the Volkswagen in 1982 were personal uses by petitioner and his family. Petitioner argues that he did intend *481 to make a profit from sale of Shaklee products but was sidetracked from this intent by his service in the General Assembly and his race for reelection. Because of petitioner's failure to substantiate any deductions with respect to Shaklee products which would be allowable in connection with a transaction entered into for profit under section 212, we need not reach this contention of petitioner. However, we do point out that whatever may have been petitioner's intent at some future time, the objective facts show no intent to make a profit in 1982. Based upon our conclusions above, petitioner has in fact miscalculated his self-employment income. The disallowed net loss of $ 7,460.73 from the Shaklee activity is not deductible in determining his self-employment income and his self-employment tax. Consequently, the self-employment income should be adjusted pursuant to section 1401 et seq., to reflect the findings of this Court. The remaining issue for decision is the addition to tax under section 6651(a)(1).[2] Section 6651(a)(1) provides for an addition to tax for the failure to file a return on the date prescribed therefor unless the failure is shown to be due to reasonable *482 cause and not due to willful neglect. Petitioner has the burden of proof on this issue. Rule 142(a); Bebb v. Commissioner,36 T.C. 170, 173 (1961); Estate of Johnson v. Commissioner, 89 T.C. No.    (slip opinion at 11) (filed July 20, 1987). Petitioner's return was not filed until April 9, 1984. Petitioners have not shown that they had an extension of time to this date to file their return and have presented no evidence to show reasonable cause for the late filing. Petitioners neither at trial nor in their brief contested respondent's determination of the addition to tax under section 6651(a)(1). Accordingly, we find petitioners have failed to sustain their burden of proof on this issue and respondent's determination is sustained. *483 Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated to the contrary, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Section 6651(a)(1) reads in pertinent part as follows:
SEC. 6651. FAILURE TO FILE TAX RETURN OR TO PAY TAX. (a) Addition to the Tax. -- In case of failure -- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * *
In the case of a failure to file a return of tax imposed by chapter 1 within 60 days of the date prescribed for filing of such return (determined with regard to any extensions of time for reasonable cause and not due to willful neglect, the addition to tax under paragraph (1) shall not be less than the lesser of $ 100 or 100 percent of the amount required to be shown as tax on such return. ↩